*787 OPINION OF THE COURT
Mark Dwyer, J.
Defendant Shi Shen Yu is charged in a New York County indictment with sex trafficking (Penal Law § 230.34) and related offenses. Defendant is currently incarcerated, pending trial, with bail set at $50,000 cash or $100,000 bond. Release on bail was denied to defendant on an earlier occasion because money to obtain a bail bond was offered by Ms. Wen Choi, but appeared to have been obtained by her from others, and ultimately was of uncertain origin. Release of codefendant Ding Yuan, who like defendant is a native of mainland China, was approved after a surety was interviewed in China via “Skype” contact by another judge of this court.
A second potential surety for this defendant has now come forward, offering to put up $50,000 cash from personal bank accounts. The People sought review of the offer pursuant to CPL 520.30, suggesting that the posting of the proposed surety’s money would not suffice to prevent defendant from fleeing, perhaps to China. The judge before whom the case was pending ordered a surety hearing, and that hearing was conducted before this court on October 14 and 22, 2015. On October 27, this court issued an order denying release, and noting that this explanatory decision would follow.
A
Defendant’s proposed surety is Chong Tony Wang. Mr. Wang lives in Basking Ridge, New Jersey, with his wife and daughter. He also is a native of China, but has been in the United States for at least 15 years, has a Master’s degree from New Mexico State University, and is an American citizen. Mr. Wang works as a scientist in New Jersey for Coty, a cosmetics company. He considers himself a millionaire. His financial records are consistent with his testimony that he is paid a salary of about $129,000 a year; has bank accounts of substantial value; and owns stocks and other investment assets. Mr. Wang is prepared to post the requisite $50,000 cash bail from his checking account. The People have raised questions about certain deposits into his accounts that have not yet been explained, but for purposes of this motion this court is prepared to assume that the money in Mr. Wang’s accounts is all money he has earned.
Mr. Wang has no real relationship with defendant. In northern China, his “family” and defendant’s “family” were well acquainted. Before the events leading to this bail proceed *788 ing, Mr. Wang last saw defendant about 25 years ago, in China. Defendant was older than Mr. Wang and the two did not know each other well. The families no longer live near each other in China. Nonetheless, defendant’s relatives and Mr. Wang’s relatives spoke about his need for bail money, and Mr. Wang was approached to see if he could help; that is why he is trying to do so.
In Mr. Wang’s brief testimony on October 14, 2015, he suggested that despite his fairly distant connection to defendant, he trusted that his $50,000 was safe. During the pressure of cross-examination on October 22nd, there was a discernibly different tone. Mr. Wang at first indicated that he was unafraid to post the cash. He then added that of course the $50,000 was important to his family. Eventually, and critically, he mentioned for the first time that an unnamed brother of Ms. Wen Choi had assured him by phone, from China, that he would reimburse Mr. Wang for any financial loss he might suffer from posting bail.
B
This court must establish, first, the legal rules that govern this motion; and second, whether the evidence before the court meets the standard. The court naturally begins with a discussion of the legal rules.
Defendant’s position is that the CPL provides when proffered bail—cash or bond—is sufficient to the purpose, and that the CPL provisions should be literally construed. Defendant asserts that Mr. Wang’s $50,000 pledge satisfies the requirements of CPL 510.30 and 520.30, and that defendant must therefore be released on that cash bail. The People’s position is that in all cases—whether cash bail or bond is involved—the bail must reasonably ensure the defendant’s return to court. In this case, the People assert, Mr. Wang’s inability to make sure defendant returns, and his lack of any personal relationship with defendant, make it plain that his proffer is inadequate to the task.
Bail and bail review are governed by the provisions of CPL articles 510, 520 and 530. The provisions of article 510 seem designed to govern what bail a court should set. The most relevant provisions as to the review issues after the set bail has been proffered are contained in article 520, particularly in sections 520.15 (2) and 520.30 (1).
*789 The first provides:
“The person posting cash bail must complete and sign a form which states (a) the name, residential address and occupation of each person posting cash bail; and (b) the title of the criminal action or proceeding involved; and (c) the offense or offenses which are the subjects of the action or proceeding involved, and the status of such action or proceeding; and (d) the name of the principal and the nature of his involvement in or connection with such action or proceeding; and (e) that the person or persons posting cash bail undertake that the principal will appear in such action or proceeding whenever required and will at all times render himself amenable to the orders and processes of the court; and (f) the date of the principal’s next appearance in court; and (g) an acknowledgement that the cash bail will be forfeited if the principal does not comply with any requirement or order of process to appear in court; and (h) the amount of money posted as cash bail.” (CPL 520.15 [2] [emphasis added].)
Section 520.30 (1) adds:
“Following the posting of a bail bond and the justifying affidavit or affidavits or the posting of cash bail, the court may conduct an inquiry for the purpose of determining the reliability of the obligors or person posting cash bail, the value and sufficiency of any security offered, and whether any feature of the undertaking contravenes public policy; provided that before undertaking an inquiry, of a person posting cash bail the court, after application of the district attorney, must have had reasonable cause to believe that the person posting cash bail is not in rightful possession of money posted as cash bail or that such money constitutes the fruits of criminal or unlawful conduct. The court may inquire into any matter stated or required to be stated in the justifying affidavits, and may also inquire into other matters appropriate to the determination, which include but are not limited to the following:
“(a) The background, character and reputation of any obligor, and, in the case of an insurance company bail bond, the qualifications of the suretyobligor and its executing agent; and
*790 “(b) The source of any money or property deposited by any obligor as security, and whether any such money or property constitutes the fruits of criminal or unlawful conduct; and
“(c) The source of any money or property delivered or agreed to be delivered to any obligor as indemnification on the bond, and whether any such money or property constitutes the fruits of criminal or unlawful conduct; and
“(d) The background, character and reputation of any person who has indemnified or agreed to indemnify an obligor upon the bond; and whether any such indemnitor, not being licensed by the superintendent of financial services in accordance with the insurance law, has within a period of one month prior to such indemnity transaction given indemnification or security for like purpose in more than two cases not arising out of the same transaction; and
“(e) The source of any money posted as cash bail, and whether any such money constitutes the fruits of criminal or unlawful conduct; and
“(f) The background, character and reputation of the person posting cash bail.” (Emphasis added.)
C
Some of what follows from these statutes is clear, and some is the subject of legitimate dispute. On the clear side: the court may make inquiry into the propriety of any bail proffer by a defendant, whether in the form of cash or bond. And no one doubts the rather broad extent of the inquiry authorized, when the defendant offers a bond. Before approving a bond, the court may determine the value and sufficiency of any security offered, and whether any feature of the undertaking contravenes public policy. The court may also resolve any matters “appropriate to the determination,” including—for example—the character of the surety; the source of his or her security; and whether its source is criminal activity. (CPL 520.30 [1].)
The rules are sensible. Bail is not set, and proffers are not approved, so that the state can be sure it will profit from absconders. Bail is set because of the state’s interest in the return of defendants to court, so that their cases can be justly resolved. It is quite natural, and appropriate, that a proffer of a bail bond be examined to determine whether the bond will likely guarantee the defendant’s return to court. In this case, for *791 example, it would be entirely sensible for the People to want to explore whether the security for a bond was sufficient to keep defendant in New York. After all, defendant faces a possible B felony prison term and then deportation to China. He could be tempted as an alternative simply to flee to China before trial. And it was thus understandable that the legislature enacted statutes which accord that privilege to inquire to the People.
And that, the People in effect argue, should answer the question of whether the People can make a similar inquiry as to a proffer of cash bail by a surety like Mr. Wang.
The People would read section 520.30 (1) to allow the same type of inquiry permitted for bond sureties of any surety for cash bail. Awkward language in the section inconsistent with that sensible reading should be ignored so as to effectuate the obvious legislative intent.
But defendant’s reading of section 520.30 (1) is different. Language was added to the bail articles in 1984 to provide express authorization for cash bail, and for the setting and review of cash bail amounts and proffers. Much of that language was engrafted onto previous statutory provisions covering bail bonds—and among what was added was the proviso of section 520.30 (1), italicized in part B of this opinion, concerning review of cash bail proffers. The language cited, says defendant, on its face plainly ends inquiries of cash bail sureties once the defendant demonstrates that the surety rightfully possesses the bail money and that this money does not represent the fruits of unlawful conduct. In this case, argues defendant, the testimony of Mr. Wang demonstrates precisely that, and concludes the legitimate court inquiry. There thus can be no further issue about whether, given Mr. Wang’s proffer, defendant will actually return to court.
D
The case law on the issue is sparse but it offers some support for the People’s position. In particular, in People v Baker (188 Misc 2d 821 [Sup Ct, NY County 2001]), Justice Ward found it appropriate to endorse the People’s position that in every bail case the court can examine the surety’s connection to the defendant and whether the bail would suffice to keep the defendant from absconding. She avoided the proviso language in section 520.30 (1) that might be read to limit such review to bond sureties (188 Mise 2d at 825-826) by suggesting that review in cash bail cases would be conducted pursuant to section 510.40, not 520.30 (1).
*792 With all respect to my colleague, this court must disagree. As this opinion has noted, article 510 seems designed primarily to govern the setting of bail, and article 520 the sufficiency of bail proffers. Section 510.40 (3) does require, as Baker notes, that a judicial inquiry be available whenever a bail proffer is made. But section 520.30 (1) and other portions of article 520 define the scope of inquiries. This court understands the general mandate of section 510.40 to be that inquiries are to be held when requested. It does not believe the section allows courts to ignore the specific rules for such inquiries contained in article 520, and proceed in every case as those rules are irrevelant so long as the inquiry is simply labeled one pursuant to section 510.40.
One or two authorities may agree with this court’s view in dictum—if perhaps grudgingly. For example, in People v McIntyre (168 Misc 2d 556 [Sup Ct, Kings County 1996]), Justice Rivera in dictum understood section 520.30 (1) to limit the power of the court as to cash bail proffers consistently with defendant’s theory. But Justice Rivera believed that result to be “contrary to the obvious intent of the statute” to further the need for the People to conduct broader inquiries. (People v McIntyre, 168 Misc 2d at 558 n * [dictum].) And the remainder of the same footnote confirms that Justice Rivera disapproved of that provision and presumably would not follow it.
Ultimately, however, the law is the law. Like Justice Rivera, this court reads the language added to the relevant provisions in 1984, when cash bail was first allowed, in the same way defendant does. As part of that 1984 amendment the legislature for the first time set what court inquiries were permissible when cash bail was offered, knowing precisely what inquires could be conducted in bail bond cases. And in over 50 words, the legislature plainly limited cash bail inquiries so as to end them, if the surety is in rightful possession of the money and the money is not the fruits of illegal activity. The key language of section 520.30 (1) deserves repeating and emphasis:
“Following the posting of a bail and the justifying affidavit or affidavits or the posting of cash bail, the court may conduct an inquiry for the purpose of determining the reliability of the obligors or person posting cash bail, the value and sufficiency of any security offered, and whether any feature of the undertaking contravenes public policy; provided that before undertaking an inquiry, of a person post *793 ing cash bail the court, after application of the district attorney, must have had reasonable cause to believe that the person posting cash bail is not in rightful possession of money posted as cash bail or that such money constitutes the fruits of criminal or unlawful conduct.”
The obvious meaning is that only if the bail proffer fails to meet these standards may the court otherwise examine it in the way bail bonds are scrutinized.
It remains briefly to address CPL 520.15 (2) (e), (g). Those provisions do oblige a person proffering cash bail to sign a form stating that the surety will undertake that the defendant will appear in court as required, on pain of forfeiture of his principal. One could read into that language a grant of permission for the court to inquire into the ability of the surety to ensure the defendant’s appearance, as is permissible in bond cases. But that interpretation would make the proviso in section 520.30 (1) meaningless, as this permission would apply in every case. The more sensible reading of section 520.15 (2) is instead that it simply sets out the provisions of a “contract” that must be signed by a surety in which the surety acknowledges the conditions which can result in the loss of the bail money.
In short, the court believes that the plain meaning of CPL article 520, and in particular of section 520.30 (1), is as defendant proposes: that inquiries of cash bail sureties must end if the defendant establishes that the surety is in legitimate possession of the bail money, and that the money is not the fruits of illegal activity.
As a matter of policy, this court disagrees completely with what the legislature has done in CPL 520.30 (1). It is as absurd, in a cash bail case, not to permit the careful inquiries that are common in bail bond cases. If anything, more careful inquiries are appropriate in cash bail cases, where a professional is not available to assist in achieving the defendant’s return. Here, for example, Mr. Wang testified that he would follow defendant to his Queens residence when defendant was released from custody, so as to learn where defendant lives, and then from New Jersey would call him constantly to keep track of his whereabouts. Even assuming Mr. Wang’s good faith, this offer is a joke.
The defense has suggested that a different cash bail policy is right for defendants who cannot make minimal bail. But *794 whatever one thinks of policies to allow charitable proffers of cash bail in minimal bail cases, they are irrevelant here. In cases like this one, involving serious crimes and substantial bail, it does not matter that a surety’s cash is deposited with the court or pledged to the bondsman; in either case it should be subject to the same checks on whether the bail will succeed in keeping the defendant present as needed in court. But, as noted, the law is the law.
E
Unfortunately for defendant, he is in no position to profit from the legislative choices made in 1984. That may be viewed as positive, for he is something of a “poster boy” for why the statute is flawed. Defendant is a native of China. He is charged with a class B felony, and faces a mandatory, lengthy state prison sentence if convicted. He also faces near-certain deportation after imprisonment. Defendant has offered cash bail from a surety who barely knows him and who apparently is motivated by some sense of family obligation—and who does not even know where defendant lives.
In any event, defendant cannot benefit from the provisions of CPL 520.30 because he does not pass the test in the cash bail proviso. Again, the proviso is satisfied if defendant’s surety plainly is in legitimate possession of the bail money, and if the money was legally obtained. True, Mr. Wang’s cash is from his bank accounts, in which, the court assumes, he has only his honestly earned money. But Mr. Wang’s testimony on cross-examination revealed for the first time that he had been guaranteed reimbursement for any loss his bail proffer might occasion. The offer came from the brother of Ms. Wen Choi, a woman who spearheaded an earlier effort to obtain a bail bond for defendant—an effort rejected by another judge of this court.
This court concludes that, at least in Mr. Wang’s mind, his $50,000 is not at risk. His trust is based not on trust in defendant’s return to court, but on “family” obligations and guarantees. The real surety is Ms. Wen Choi’s brother. And the court plainly does not know the provenance of his money, whether it is the fruits of crime, or even the surety’s name.
The court accepts defendant’s reading of the limitations on a court’s inquiry of a surety where cash bail is offered. But the court concludes that defendant “flunks” even that limited inquiry. Thus, defendant’s bail proffer is rejected.